## QUINE v. PALOMA BRICK CO., Inc. (STANLEY, Intervener).
### No. 1251.

Court of Appeal of Louisiana. First Circuit.
Dec. 4, 1933.

R. F. Walker, of Baton Rouge, for appellant.

Robt. G. Beale, of Baton Rouge, for appellee.

LeBLANC, Judge.

In February, 1924, on the petition of Morgan F. Quine, the Paloma Brick Company, Inc., was placed in the hands of a receiver. In July of the same year, Alphonse Lindsley, who had been appointed and who had qualified as receiver, applied to the district court for an order to sell the property of the corporation in order to realize funds with which to pay its debts. The necessary order was granted and the property was duly advertised for sale. On the day of sale, however, there were no bidders and a subsequent order was obtained for the sale of the property without appraisement. In the meantime, James C. Stanley, third opponent herein, filed an intervention claiming a lien on the proceeds to be derived from the sale of the property to the extent of $309.80 for labor performed for the corporation. The record does not show that the sale of the property was ever made, but it seems to be admitted that it did take place and that there is at present, on deposit in the Bank of Clinton, the very sum claimed by third opponent, awaiting a determination of the issue presented by his intervention, which is the subject of this controversy.

In his petition of third opposition and intervention, filed in September, 1924, Stanley alleges that he owns and holds a receipt of the Paloma Brick Company for the sum of $500, for five shares of the capital stock of that company, and that under the terms of that receipt there is due him the sum he claims for labor performed in payment of the stock, as the stock was never issued to him. He attaches the receipt referred to, which, on its face, shows that the amount of $500 was to be paid by discounting the pay rolls rendered by him while performing the work he was to do, at 20 per cent. The receipt contains the following stipulation: "It is understood that if the stock is not issued settlement as above is to be returned in full." Annexed to the petition also are six other receipts aggregating $309.80, the total amount of the discounted pay rolls presented by Stanley for the work he had performed. His contention now is that the stock never having been issued, he is entitled, under the agreement, to a return of his money.

During October, 1924, the receiver of the corporation filed an answer to Stanley's petition of intervention in which it is averred that the agreement relied on by him was a simple one for the purchase of five shares of stock which he would pay for with work and labor, he to be credited with 20 per cent. on each pay roll as the work was performed, and that, in accordance with the agreement, he has been so credited to the amount of $309.80 on account of the purchase of the said stock which the corporation is ready to issue to him upon payment of the balance due thereon, that is the sum of $190.20.

All proceedings in the matter remained in abeyance until March, 1932, when counsel for the receiver appeared in court again to except to further prosecution of Stanley's intervention on the ground that his petition disclosed no cause or right of action. This exception was set for trial at once, and, from a judgment sustaining the same, the intervener has taken this appeal.

We are of the opinion that the exception was properly maintained, as the intervener is in no sense of the word a creditor of the corporation that was placed in receivership. The amount he claims was merely a credit placed to his account for the purchase of five shares of stock in the corporation which he had agreed to buy by performing services and discounting his pay rolls. In that respect he was in the same position as were some of the claimants against the receiver in the case of Villere v. New Orleans Pure Milk Co., Ltd., 122 La. 717, 48 So. 162, 175. They also had consented to take stock in payment for their services rendered to the corporation, which stock had never been issued or delivered to them, and the court distinctly held that they had no claims against the corporation, then under receivership, as creditors. "Whatever legal rights they may have in the premises" reads the decision, "are such as will belong to them as holders of the stock which they consented to take, and which the company contracted and consented to issue to them for and in consideration of their services." But it is urged by counsel for the intervener here that the agreement in this case contained the stipulation for the return of his money in case the stock was not issued to him, which does not appear to have been a part of the agreement in the case cited and that makes a marked difference between the two. Granting that to be so, the stipulation he relies on did not grant the intervener any greater right than the law already accorded him, for certain it is that the corporation could not have kept his money and not issue the stock to him too. However, intervener's claim arising as it does out of the contract which he has set out in his petition, it is necessary, before he can demand performance on the part of the corporation, for him to show that he has fully performed on his part. Civ. Code, arts. 1913 and 1914. Not only has he failed to allege that he has done so by performing work to the full extent of the amount of the contract, but he has also failed to allege that he ever called on the corporation to issue the stock to him or that it has defaulted on its contract in any manner. The lack of such allegations is fatal to his petition and subjects it to the effect of the exception of no cause of action that was pleaded against it.

The judgment below properly dismissed the intervention and it is therefore affirmed at intervener's costs.